UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

    Plaintiff,

    v.

J<small>EROME</small> W<small>ATSON</small>,

    Defendant (1).

Case No. 19-cr-20245

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [#23]

#### I. I<small>NTRODUCTION</small>

On April 18, 2019, Defendant Jerome Watson ("Defendant") was indicted on eleven counts related to bank fraud, attempt and conspiracy, and aggravated identity theft. ECF No. 1  Defendant entered a guilty plea to bank fraud conspiracy, 18 U.S.C. § 1349 (Count 1), and aggravated identity theft, 18 U.S.C. § 1028A (Count 3), on August 20, 2019.  PSR ¶ 8.  This Court sentenced Defendant to serve an aggregate term of 42 months of imprisonment, as well a term of supervised release and order of restitution, which he began serving on February 4, 2020.  ECF No. 22.

Presently before the Court is Defendant's letter seeking relief due to the current COVID-19 pandemic, ECF No. 23, which the Court construed as a Motion for Compassionate Release.  ECF No. 24.  Following this Court's Order on June 22,

2020, Defendant's counsel submitted a supplemental brief. ECF No. 33. The Government filed a Response on October 16, 2020.[1] ECF No. 38.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve Defendant's Motion for Compassionate Release on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, the Court will **DENY** Defendant's Motion for Compassionate Release [#23].

## II. BACKGROUND

In June 2015, Defendant, along with his co-defendants, conspired and participated with members of the Felony Lane Gang ("FLG") to defraud federally insured financial institutions. ECF No. 1, PageID.1–2. Defendant agreed to commit bank fraud in an around Detroit, Michigan, utilizing rental cars and flights between Florida and Michigan to carry out the scheme. PSR ¶ 13. He broke into cars, stealing personal identification documents, personal checks, bank debit cards, bank credit cards, and cash for the purpose of later committing identify theft and bank fraud. ECF No. 15, PageID.61. In total, the conspirators frequently obtained or attempted to obtain at least $25,000 from various federally insured financial institutions. *Id.* Additionally, Defendant and his co-defendants caused losses to victims stemming

---

[1] The parties filed four separate Stipulation and Orders regarding the extension of filing deadlines. *See* ECF Nos. 27, 28, 35, 37.

from damages to cars while breaking into them, stealing cash from the cars, and from accidents to the rental car while fleeing. *Id.* at PageID.62.

On February 4, 2020, the Court sentenced Defendant to serve 18 months on one count of bank fraud (Count 1) and a consecutive term of 24 months on a count of aggravated identity theft (Count 3), for an aggregate term of 42 months imprisonment. ECF No. 22. The Court also imposed a term of supervised release for a term of 36 months on Count 1 and 12 months on Count 3, which was to be served concurrently. *Id.* Additionally, the Court also ordered restitution of $31,145. *Id.*

Defendant now moves the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the threat of COVID-19. ECF No. 23. Defendant is thirty-nine years old and serving his sentence at FCI Butner Medium II in Butner, North Carolina. ECF No. 33, PageID.179. The BOP website does not list FCI Butner Medium II as one of its facilities with active COVID-19 cases, and the Government emphasizes that no deaths have been reported amongst the prison population or staff at the time of its writing. ECF No. 38, PageID.233. https://www.bop.gov/coronavirus/. FCI Butner Medium II has had twelve positive cases amongst the prison population and two positive cases amongst staff. *Id.*

As of October 16, 2020, the time of the Government's Response to Defendant's present motion, Defendant served 19 months of his 42 month sentence.

ECF No. 38, PageID.232. He is scheduled for release on March 14, 2022. ECF No. 33, PageID.196. In his present Motion, Defendant argues that his pressing family circumstances, including (1) his brother's tragic death; (2) his son's need for constant care in light of his disabilities; and (3) his family's need for financial support, constitute "extraordinary and compelling reasons" for his release. *Id.* at PageID.179. Moreover, Defendant asserts that his Body Mass Index ("BMI") of over 30 places him at an increased risk to contract COVID-19 while in prison. *Id.* He seeks an order reducing his sentence to time served or, in the alternative, for an order modifying his judgment to allow for the remainder of his sentenced to be served on home confinement. *Id.* at PageID.198.

### III. LAW & ANALYSIS

**A. Legal Standard**

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release. As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original

term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, a court must address two key questions. The first is whether a defendant has exhausted all administrative remedies with the BOP. The second is whether, after considering "extraordinary and compelling reasons," as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), there are sufficient grounds to warrant a sentence reduction.

Moreover, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). U.S. Sentencing Guidelines Manual § 1B1.13 is the "applicable policy statement" which this Court must comply with. This section explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). Further, a defendant must fit within at least one of four categories of "extraordinary and compelling reasons." Application Note 1 to U.S.S.G. § 1B1.13 provides, in relevant parts, when extraordinary and compelling reasons exist:

(A) Medical Condition of the Defendant

(ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

…

    (C) Family Circumstances –

        (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Here, Defendant asserts that his preexistent medical condition and family circumstances, combined with his continued incarceration during the COVID-19 pandemic, warrant compassionate release. ECF No. 33, PageID.187. Defendant thus argues that these circumstances are "extraordinary and compelling" pursuant to U.S.S.G. § 1B1.13. Moreover, Defendant asserts that the 18 U.S.C. § 3553(a) factors favor his release. *Id.* at PageID.196–98.

## B. Analysis

### 1. Exhaustion

The First Step Act of 2018 amended 18 U.S.C. § 3582 to permit defendants to move for compassionate release themselves. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). In a defendant-initiated motion for compassionate release, the district court may not act on the motion unless the

defendant files it "after" either completing the administrative process within the BOP or waiting thirty days from when the warden at the facility received his or her request. 18 U.S.C. § 3582(c)(1)(A).

Here, the Government does not raise the issue of exhaustion. ECF No. 38, PageID.241. Indeed, Defendant petitioned the warden for consideration for compassionate release on July 17, 2020. ECF No. 33, PageID.185; *see also* ECF No. 33-2. The warden denied his petition on July 21, 2020. ECF No. 33, PageID.185; *see also* ECF No. 33-3. Defendant waited the requisite thirty days from the date when his warden received his request to file his present Motion, which this Court received on September 8, 2020. *See* ECF No. 33.

Accordingly, Defendant has exhausted his administrative remedies with the BOP, as is now mandatory per the Sixth Circuit's decision in *United States v. Alam*, 960 F.3d 831, 2020 U.S. App. LEXIS 17321 (6th Cir. 2020). He thus satisfies the Court's first key question in its analysis.

### 2. Extraordinary and Compelling Reasons

As explained above, in order for a court to grant compassionate release, a defendant must demonstrate that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. 18 U.S.C. § 3582(c). The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. These

reasons are classified in four categories: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. n.1(A)-(D).

Here, Defendant explains that his BMI of 34.9 and his family circumstances warrant compassionate release. ECF No. 33, PageID.187. As for Defendant's medical condition, the Government does not contest that Defendant's BMI places him at an increased risk of contracting COVID-19. ECF No. 38, PageID.242. In its Response, the Government thus asserts that Defendant has satisfied this second criterion for release. *Id.* The Court takes notice that Defendant's medical records establish that Defendant is indeed clinically obese. ECF No. 34-1. The CDC has indicated that Defendant's cited medical condition, specifically his obesity, place Defendant at an increased risk for severe illness from COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020).

In light of the Government's concession that Defendant has demonstrated "extraordinary and compelling reasons" for compassionate release based on his preexistent medical condition, the Court finds it unnecessary to rule on Defendant's

cited family circumstances as additional reasons for his release.[2] Accordingly, the Court finds that extraordinary and compelling reasons exist that would be sufficient to justify compassionate release.

### 3. Determination of Dangerousness to the Community and the 18 U.S.C. § 3553(a) Factors

As a final matter, a district court must determine that the defendant does not present a danger to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13. Additionally, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction. *See id.*

Here, the Government asserts that Defendant would no longer pose a danger to the community if released. ECF No. 38, PageID.244. The Government presents its argument based on Defendant's post-offense conduct. *Id.* Indeed, as the Court took notice at the time of Defendant's sentencing, Defendant is not defined by his criminal history. Defendant has put in work to rehabilitate himself between the

---

[2] Specifically, Defendant's fiancé Tandrell Ashley explains that Defendant's brother passed away in April and that he provided financial support and care for her nineteen-year-old son, Jaivion Antoine, who requires twenty-four-hour care. ECF No. 33-4. Defendant provided a physician's note to corroborate Jaivion Antoine's complex medical needs. ECF No. 33-5. In his letter to the Court, Defendant explained that "[i]t's been a mental, physical, emotional and financial struggle for Tandrell the past 14 months [he's] been incarcerated, but due to the this 'COVID-19 Pandemic' the past 2 ½ months have been very hectic for [Tandrell]." ECF No. 23, PageID.160.

offense and his arrest in the present matter.  In that period, Defendant completed three years of a four-year apprenticeship in plumbing and was employed as a full-time plumber and appliance repairman.  PSR ¶¶ 75, 76.  His employer, Mr. Robert Pollina, provided rave reviews of Defendant's work at the time of Defendant's sentencing.  PSR ¶ 78.  The Court takes notice that Mr. Pollina described Defendant as one of his "most dedicated employees" who is "well respected by everyone" at his business in support of Defendant's present motion.  ECF No. 33-7, PageID.218.  Mr. Pollina also writes that Defendant is "an upstanding, honorable, and upright individual, and an active member of the community" who would have a position in his business upon his release from prison.  *Id.*

The Court also takes notice of Defendant's letter, where he explains that during the period between his conduct in 2015 and arrest in 2019, he "became a very productive, hard working, tax paying, law abiding citizen."  ECF No. 23, PageID.155.  Defendant emphasizes his commitment to his religion, employment, education, and his family.  *Id.*  Relatedly, the Court acknowledges receiving a copy of Defendant's recent High School Equivalency Credential certificate, which Defendant received on October 5, 2020.  The Court finds that the aforementioned circumstances, combined with the Government's belief that Defendant would no longer pose a danger to the community, demonstrates that Defendant has not only

committed to, but has displayed significant signs of rehabilitation. Accordingly, the Court concludes that Defendant has met the third criterion for compassionate release.

Nevertheless, the Court agrees with the Government that consideration of the factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of granting the requested relief. The factors set forth in § 3553(a) include a defendant's history and characteristics; the nature and circumstances of the offense; due consideration of the seriousness of the offenses; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing him or her with any necessary correctional services and treatment. *See* 18 U.S.C. § 3553(a). Even when an incarcerated individual has shown "extraordinary and compelling reasons" and has demonstrated that he is not a danger to the community, the Court must consider the aforementioned factors to determine whether release is appropriate.

Here, Defendant was convicted of serious offenses, namely violations of 18 U.S.C. § 1349 and 18 U.S.C. § 1028A. At the time of Defendant's sentencing, the Court emphasized that the nature of these offenses is serious, especially given that individuals' finances were thrown into disarray. Indeed, the offenses were well-planned and involved multiple individuals across Florida and Michigan. As the Court previously acknowledged, there was a significant amount of financial loss suffered by individuals and financial institutions. The Court accordingly sentenced

Defendant to 42 months of imprisonment. This sentence included a 24-month mandatory sentence for Count 3 and an 18-month sentence for Count 1. The Court imposed a 9-month downward variance from the Guideline range for Count 1 in light of Defendant's work towards rehabilitation, as explained *supra*.

At the time of sentencing, the Court was concerned with affording adequate deterrence. Defendant's current sentence continues to serve as a strong deterrent for others who may consider conspiring to defraud federally insured financial institutions. The Court thus finds that granting Defendant compassionate release at this juncture would inappropriately minimize the serious nature of the offenses. In light of the Court's finding as to dangerousness, the Court agrees with the Government that the only factors that favor Defendant are the need to protect the public and the need for specific deterrence. Accordingly, the § 3553(a) sentencing factors weigh against Defendant's early release.

In sum, while the Court is concerned with the special risks that COVID-19 poses to incarcerated individuals like Defendant, the Court concludes that Defendant does not meet the necessary requirements for release.

## V. Conclusion

For the reasons articulated above, Defendant's Motion for Compassionate Release [#23] is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 29, 2020

>/s/Gershwin A. Drain
>GERSHWIN A. DRAIN
>United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on Jerome Watson, No. 19800-104, FCI Butner Medium II, 2 Old 75 Hwy, Butner, North Carolina, 27509 on October 29, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager