UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JEROME WATSON,

Defendant.
_______________________________/

Case No. 19-cr-20245

HON. GERSHWIN A. DRAIN

*GOVENRMENT'S RESPONSE AND BRIEF OPPOSING RENEWED MOTION FOR COMPASSIONATE RELEASE (*ECF Nos. 42, 48*)*

## INTRODUCTION AND PROCEDURAL POSTURE

On May 14, 2020, Watson sent a letter to the Court, which the Court construed as a Motion for Compassionate Release. (ECF No. 23: Letter; ECF No. 24: Order). The Court appointed counsel, set a briefing schedule and, on October 29, 2020, denied Watson's motion. (ECF. No. 41: Opinion and Order). The Court found that, although Watson had exhausted his administrative remedies, established extraordinary and compelling reasons for relief (his obesity), and had demonstrated that he was no longer a danger to the community, the sentencing factors under 18 U.S.C. § 3553(a), particularly the seriousness of the offenses and the need for general deterrence, weighed against release after

Watson had served only about 18.5 months of a 42 month sentence. (ECF No. 41, Page.ID 262, 268-273). Because the government conceded, and the Court agreed, that Watson's obesity and the Covid-19 pandemic established extraordinary and compelling reasons for relief, it found it unnecessary to rule on whether Watson's family circumstances presented another extraordinary and compelling reason. (ECF No.41, PageID. 269-270).

On April 29, 2021, Watson sent another letter to the Court seeking release, which the Court again construed as a renewed Motion for Compassionate Release. (ECF No.42: Letter). As with the first motion, the Court appointed counsel and established a briefing schedule. (ECF No. 44, ECF No. 46). In a supplemental brief, Watson argues that his family circumstances, the Covid-19 pandemic, his preexisting medical condition (obesity), and his rehabilitation establish extraordinary and compelling bases for compassionate release. However, the facts surrounding Watson's health have changed since October 2020. First, Watson contracted and survived a Covid-19 infection while at FCI Butner Medium II. (ECF No. 48: Supplemental Brief, Exhibit 4 (sealed): Medical Records, at 1, 16-17). Second, shortly

after his recovery, Watson refused an offered Covid 19 vaccination. (*Id.* at 20). These new facts effectively take the Covid pandemic and Watson's obesity off the table as potential "extraordinary and compelling" reasons for compassionate release, leaving the Court to consider whether Watson's family circumstances combined with his post-offense rehabilitation are extraordinary and compelling circumstances and, if so, whether they justify releasing Watson now, after serving approximately 27 months of his 42 month sentence in light of the factors to be considered under 18 U.S.C. § 3553(a).

The United States respectfully adopts, and incorporates by reference, its response to Watson's first compassionate release motion, except as noted in the argument section below. (*See* ECF 38, PageID.232-248).

**ARGUMENT**

1. **Watson's medical condition (obesity) and the Covid 19 Pandemic no longer qualify as "extraordinary and compelling" reasons for compassionate release.**

During the pandemic the government has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19,

and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision. The government therefore conceded that Watson had demonstrated an "extraordinary and compelling" reason for compassionate release in its response to his first motion because of his obesity. But subsequent developments have undermined Watson's argument this time around.

First, he declined the vaccination. On April 2, 2021, Watson was offered the Pfizer COVID-19 vaccine, and he refused it without any known medical contraindication for the vaccine. (ECF No. 48: Supplemental Brief, Exhibit 4 (sealed): Medical Records). The Pfizer vaccine was approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

Various studies continue to confirm the efficacy of the vaccines. For instance, on April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine, based

on mRNA technology (like the Moderna vaccine), was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against severe disease (defined by the CDC) and 95.3% effective against severe disease (defined by the FDA).

https://www.businesswire.com/news/home/20210401005365/en/.

The CDC likewise recently reported the effectiveness of the Pfizer and Moderna vaccines in preventing infection during the same period, and concluded that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines. COVID-19 vaccination is recommended for all eligible persons . . ." "Interim Estimates of Vaccine Effectiveness,"

https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Thus, Watson's obesity can no longer be an extraordinary and compelling reason for compassionate release. He elected to decline the

vaccine, forgoing the opportunity for "self-care" that BOP made available. *See, e.g.*, *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release.").

In *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021), the court denied relief even though the defendant was 58 years old and suffered from obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, explaining:

> Thus it seems that Jackson has voluntarily declined to "provide self-care" and mitigate her risk of a severe COVID-19 infection . . . There is no apparent medical reason that Jackson should

> not receive the vaccine. . . .Where Jackson bears the burden of demonstrating her entitlement to relief, . . . her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release.

*United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (Beetlestone, J.). Another judge wrote:

> Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety. 18 U.S.C. § 3582(c)(1)(A). A prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination. Allowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated. The court is exceedingly hesitant to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms. Such a result would be profoundly counter-productive and would militate against the ameliorative purposes of compassionate release. Denial of Defendant's request for release is warranted on this basis alone.

*United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (Cleland, J.); *see also, e.g.*, *United States v. Jackson*, 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021) (Magnuson, J.) ("Jackson's decision to refuse the vaccine flies in the face of any medical

recommendation regarding the vaccines. While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.”); *United States v. Williams*, 2021 WL 321904 (D. Ariz. Feb. 1, 2021) (Rayes, J.) (defendant’s explanation for refusal was “incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release”); *United States v. Gonzalez Zambrano*, 2021 WL 248592 (N.D. Iowa Jan. 25, 2021) (Williams, J.) (denied based on 3553(a) factors, but states: “It would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release” by refusing “health care [offered] to them”); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) (Tharp, J.) (“In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction.”).

Nearly all courts agree with these views. *See, e.g.*, *United States v. Martinez*, 2021 WL 718208, at *2 (D. Ariz. Feb. 24, 2021) (Logan, J.); *United States v. Figueroa*, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021) (Mueller, C.J.) ("If defendants could buttress their motions for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."); *United States v. Piles*, 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021) (Bates, J.); *United States v. Reynoso*, 2021 WL 950081, at *2 (D. Mass. Mar. 12, 2021) (Gorton, J.) ("[T]he sincerity of his concern for his health is dubious given that he rejected the opportunity to receive the COVID-19 vaccine"); *United States v. Toney*, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) (Seibel, J.); *United States v. Mascuzzio*, 2021 WL 794504, at *3 (S.D.N.Y. Mar. 2, 2021) (Keenan, J.); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (Bell, J.); *United States v. French*, 2021 WL 1316706, at *6 (M.D. Tenn. Apr. 8, 2021) (Richardson, J.) (relief denied in part based on refusal of vaccine); *United States v. Pruitt*, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (Boyle, J.).

Defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, that variants may emerge that bypass the vaccines, and that the vaccines may cause side effects. These courts and others have almost uniformly rejected these arguments. One explained:

> Given that Rodriguez is or will soon be fully vaccinated against COVID-19, the Court concludes that Rodriguez's obesity and hypertension are not extraordinary and compelling reasons justifying his release. . . . Rodriguez argues that it is unclear how effective the Pfizer vaccine is, how long its effects will last, and whether it protects against the COVID variants, leaving a risk that he could still become seriously ill. Although all evidence to date is that the Pfizer vaccine is very effective, no one claims that it is 100 percent effective, and thus there remains a small risk that Rodriguez could be infected by COVID-19 and become seriously ill from that infection. But every prisoner runs a small risk of lots of serious medical conditions (including COVID-19). The small risk that Rodriguez may contract COVID-19 and become seriously ill is simply too speculative to justify his release.

*United States v. Rodriguez*, 2021 WL 1187149, at *1-2 (D. Minn. Mar. 30, 2021) (Schlitz, J.). Accordingly, the prevailing view is that "absent some shift in the scientific consensus, vaccination against COVID-19

would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.); *see also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) (denied after first dose, and rejects speculation regarding future effectiveness against variants: "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation."); *United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (Snyder, J.) ("Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19) (citing CDC studies and Yang Liu, et. al., Neutralizing Activity of BNT162b2-Elicited Serum, The New England Journal of Medicine (March 8, 2021), https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_home)); *United States v. Goston*, 2021 WL 872215, at *3 (E.D. Mich.

Mar. 9, 2021) (Levy, J.) (finding the potential that the Pfizer vaccine does not protect against variants inadequate to justify release); *United States v. Brown*, 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021) (Wood, J.) (speculation about variants is insufficient); *United States v. Del Rosario Martinez*, 2021 WL 956158, at *3 n.10 (S.D. Cal. Mar. 10, 2021) (Anello, J.) (declining to rely on a frequently submitted declaration of Dr. Tara Vijayan, stating, "with all due respect to Dr. Vijayan's expertise and experience, the Court declines to contribute in any fashion to public skepticism regarding the safety and efficacy of the available COVID-19 vaccines or to second-guess the Food and Drug Administration's findings and decision to issue Emergency Use Authorizations for COVID-19 vaccines 'for which there is adequate manufacturing information to ensure its quality and consistency.' The Path for a COVID-19 Vaccine from Research to Emergency Use Authorization, available at www.FDA.gov/COVID19vaccines#FDAVaccineFacts (last visited 3/9/2021)."); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) ("The potential side effects from the vaccination are trivial in comparison to the severe illness, including

death, Mr. Greenlaw may endure if he contracts the virus. Moreover, the same CDC that Mr. Greenlaw cites [listing possible side effects of the vaccine] unequivocally recommends that people get vaccinated").

It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, nothing would prevent Watson from filing another motion for compassionate release. *United States v. Singh*, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) (Brann, J.) ("Indeed, the majority of CDC recommendations for fully vaccinated people indicate that the CDC's primary concern is not with fully vaccinated individuals being hospitalized due to COVID-19, but with such individuals potentially spreading the virus to unvaccinated individuals. . . . It is, of course, possible that future research will demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to demonstrate that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus.

The result therefore will not be different if Watson changes his mind and takes the vaccine, as all public health officials advise, as that action would also preclude compassionate release grounded on COVID-19. *See, e.g.*, *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."). Absent a dramatic change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end this unprecedented period in which compassionate release has been available based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is

"rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("a defendant's medical condition must be one of substantial severity and irremediability"); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (Pepper, J.) (must be extraordinary; "Many inmates suffer from pain and mental illness."). At present, Watson does not present any such condition.

The second fact undermining Watson's medical argument is that he contracted COVID-19 and, fortunately, apparently recovered from it without significant consequence. We cannot say that this eliminates all risk, given that there is not yet scientific certainty regarding the risk of reinfection. But in this circumstance, the large majority of courts to address the matter have concluded that the risk is mitigated and compassionate release is not justified on this basis, even before vaccination. *See, e.g.*, *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (Pratter, J.) ("the risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection. . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19

and was asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."). A court recently summarized:

> [T]he United States Department of Health and Human Services has stated that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again. Based on the reported recurrence rate from the early stages of ongoing research, the chances of becoming reinfected appear to be very small." *See* https://combatcovid.hhs.gov/ive-had-covid-19 (last visited December 28, 2020). And a recent study by the University of Oxford and the Oxford University Hospitals NHS Foundation Trust found that those who previously had COVID-19 are highly unlikely to contract the illness again for at least six months following the first infection. *See* https://www.ox.ac.uk/news/2020-11-20-prior-covid-19-infection-offers-protection-re-infection-least-six-months# (last visited December 28, 2020). The National Cancer Institute agrees, reporting that the COVID-19 antibody "protective effect is strong and comparable to the protection afforded by effective SARS-CoV-2 vaccines, although developing protection from vaccination is much safer than from natural infection. This finding suggests that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection." *See* https://www.cancer.gov/news-events/cancer-currents-blog/2020/ coronavirus-antibodies-protect-against-future-infection (last visited December 28, 2020).

*United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020) (Seabright, J.); *see also United States v. Carter*, 2021 WL 427110, at *1 (E.D. Pa. Feb. 8, 2021) (McHugh, J.) (relying on the same reports and reaching the same conclusion). Another court expounded: "it is highly unlikely Andrews will be reinfected, and speculative that reinfection would lead to significantly more serious symptoms than she has already experienced." *United States v. Andrews*, 2020 WL 7714708, at *4 (D. Nev. Dec. 29, 2020) (McKibben, J.); *see also, e.g.*, *United States v. Jenkins*, 2021 WL 665854, at *4 (S.D. Ind. Feb. 19, 2021) (Barker, J.) ("To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has recovered from COVID-19 – even when that defendant has risk factors for severe symptoms. . . . The fact that the BOP is now actively vaccinating inmates against COVID-19 . . . only underscores the speculative nature of any concern about reinfection."); *United States v. Marley*, 2020 WL 7768406, at *3 (S.D.N.Y. Dec. 30, 2020) (Caproni, J.) ("With the vaccine rollout underway in the United States, the Court anticipates that Mr. Marley will receive a vaccine well in advance of his becoming susceptible to reinfection."); *United States v. Thompson*, 2020

WL 7771141, at *3 (N.D. Ill. Dec. 30, 2020) (Bucklo, J.); *United States v. Palpallatoc*, 2020 WL 7695692, at *3 (W.D. Wash. Dec. 28, 2020) (Settle, J.); *United States v. McCallum*, 2020 WL 7647198, at *1 (S.D.N.Y. Dec. 23, 2020) (Seibel, J.) ("Now that he has weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense."); *United States v. Purry*, 2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020) (Dorsey, J.) (the possibility of reinfection does not change an earlier denial of relief; "a possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying his release.").

Thus, because Watson refused the vaccine against Covid 19, and because he has already contracted and survived the disease apparently unscathed, compassionate release on the basis of his medical condition and threat of Covid-19 is no longer possible.

**2. This Court may legally find that Watson's family circumstances combined with his post-offense rehabilitation are "extraordinary and compelling" reasons for compassionate release.**

At the time of Watson's last motion, and this Court's Opinion and Order denying it, prevailing law required that any reduction in sentence "be consistent with the applicable policy statements issued by

the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Courts generally understood that the policy statement and application notes found in and under § 1B1.13 were mandatory, and strictly limited the circumstances qualifying as "extraordinary and compelling reasons" for compassionate release. *See Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014).

But since that time, this Circuit has held that USSG § 1B1.13 "does not 'appl[y]' to cases where an imprisoned person files a motion for compassionate release." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). Later, in *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) the court, while acknowledging that *United States v. Ruffin*, 981 F.3d 271, 267 (6th Cir. 2020) mandated that a district court engage in a three-step process in evaluating compassionate release motions which included, as step two, consideration of applicable sentencing commission policy statements, found "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." Thus, the Court today has much broader discretion in its determination of what might constitute "extraordinary

and compelling" reasons for compassionate release than it did at the time of Watson's first motion.[1] "Several cases in the Eastern District of Michigan have adopted textual analyses to determine what reasons are 'extraordinary and compelling.'" *United States v. Powell*, No. 2:12-cr-20052-2, 2021 WL 613233, at *2 (E.D. Mich. Feb. 17, 2021) (Murphy, J.) (collecting cases). An "extraordinary and compelling reason" for compassionate release is one that is "beyond what is common, and the forcefulness of the evidence tends to convince the Court to release the inmate." *Id.* (internal quotation marks and quotations omitted). "Put another way, an extraordinary and compelling reason is one that is beyond what is usual, customary, regular, or common, and is so great that irreparable harm or injustice would result if the relief is not granted." *Id.* (cleaned up). Other circuits continue to find § 1B1.13 and its application notes important "guideposts" in determining the issue. *United States v. McGee*, -- F.3d --, 2021 WL 1168980, at *10 (10th Cir. Mar. 29, 2021); *see United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir.

[1] Because the government conceded Watson's first motion established a "extraordinary and compelling" reason for release due to his medical condition, the strictures of USSG 1B1.13 did not come into play in the Court's decision denying relief.

2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").

Here, Watson argues that his family circumstances, combined with this significant post-offense rehabilitation, combine to provide the court with an "extraordinary and compelling" reason for release. More accurately, he argues that either of these circumstances would alone be an extraordinary and compelling reason for release. However, post-offense rehabilitation cannot, alone, qualify. *See* 28 U.S.C. 994(t)( "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."

There is, of course, no doubt that Watson's family has been significantly impacted by the Covid-19 pandemic. When Watson went

to prison, his brother stepped in to help, at least financially, with Watson's family, which consisted of his fiancé, their two minor daughters, and two older children, Watson's teenage daughter, and his fiancé's profoundly-disabled 19-year-old son, Jaivion, to whom Watson provided significant care. Then, Watson's brother tragically died from Covid-19, suddenly eliminating the family support he contributed. So, too, did Jaivion's paternal grandmother, who had also helped with his care. Watson's fiancé's parents, who provide daycare for Jaivion, are older with health conditions of their own preventing them from giving Jaivion all the care he needs.

Many of these same circumstances were presented in Watson's initial motion for compassionate release, but the Court found it unnecessary to rule on whether they established extraordinary and compelling reasons because his medical condition satisfied the definition at the time. (ECF No.41, PageID. 269-270). Moreover, the application notes underlying USSG 1B1.13 were thought to be mandatory, and, even had the Court reached the issue, these family circumstances did not squarely fit into those described there. Now, however, the Court must decide whether Watson's family

circumstances, alone or in combination with his rehabilitation, constitute "extraordinary and compelling" reasons for release. But, even if they do, the sentencing factors under 18 U.S.C. § 3553, which led the Court to deny the previous motion, still weigh against release.

### 3. Even if Watson's family circumstances combined with his post-offense rehabilitation are "extraordinary and compelling" reasons for compassionate release, the 18 U.S.C. § 3553(a) factors weigh against release.

As the government argued in its response to Watson's initial motion (largely repeated here for the Court's convenience), a district court may not grant a motion for compassionate release to an otherwise eligible prisoner unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A). Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020) ("The § 3553(a) factors . . . weigh against his request for compassionate release."); *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *3–*5 (E.D. Mich. May 15, 2020) (holding that the "[d]efendant's circumstances do not warrant compassionate

release . . . under 18 U.S.C. § 3553(a)"); *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *6 (E.D. Mich. May 15, 2020) (denying compassionate release because "the 18 U.S.C. § 3553(a) sentencing factors do not favor release"); *see also United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors). As at sentencing, those factors require the district court to consider, among other things, Watson's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, the protection of the public, the applicable sentencing guideline range and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

The 18 U.S.C. § 3553(a) factors were reviewed in the government's sentencing memorandum in this case, and have not significantly changed. (R.19: Government's Sentencing Memorandum at 7-16, Page ID 87-96). The applicable aggregate guideline range was 51-57 months. (*Id*. at 7, Page ID 87; PSR ¶¶ 84-85). The offenses were planned, multi-jurisdictional, numerous, and involved multiple non-institutional victims as well as banks and were, therefore, quite serious. (R.19:

Government's Sentencing Memorandum at 8-12, Page ID 88-92; PSR ¶¶ 11-20). Watson's criminal background is extensive.

Significantly, in deciding Watson's first motion, this Court found that the 3553(a) factors, particularly the seriousness of the offenses and the need for general deterrence, weighed against release, at that time after Watson had served only about 18.5 months of a 42 month sentence. (ECF No. 41, Page.ID 262, 268-273). Nothing has changed relative to these factors save the length of time Watson has now been incarcerated. Thus, the Court must now decide whether 27 months in custody is enough, under the circumstances presented, to reflect the seriousness of the offense and to afford adequate deterrence. The government cannot agree that it is, but does recognize that it is a close question and one left squarely within this Court's discretion.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*s/Craig A. Weier*
Craig A. Weier (P33261)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9678
craig.weier@usdoj.gov

June 17, 2021

CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF.

*s/Craig A. Weier*
Craig A. Weier (P33261)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9678
craig.weier@usdoj.gov