UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

Plaintiff,

v.

J<small>EROME</small> W<small>ATSON</small>,

Defendant (1).

Case No. 19-cr-20245

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>
J<small>UDGE</small> G<small>ERSHWIN</small> A. D<small>RAIN</small>

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE [#42, 48]

### I. I<small>NTRODUCTION</small>

On April 18, 2019, Defendant Jerome Watson ("Defendant") was indicted on eleven counts related to bank fraud, attempt and conspiracy, and aggravated identity theft. ECF No. 1 Defendant entered a guilty plea to bank fraud conspiracy, 18 U.S.C. § 1349 (Count 1), and aggravated identity theft, 18 U.S.C. § 1028A (Count 3), on August 20, 2019. PSR ¶ 8. This Court sentenced Defendant to serve an aggregate term of 42 months of imprisonment, as well a term of supervised release and order of restitution, which he began serving on February 4, 2020. ECF No. 22. On October 29, 2020, the Court denied Defendant's first Motion for Compassionate Release. ECF No. 23.

Presently before the Court is Defendant's second request seeking relief due to the COVID-19 pandemic, ECF No. 42, which the Court construed as a second Motion for Compassionate Release, ECF No. 43. Following this Court's Order on May 21, 2021, Defendant's appointed counsel submitted a supplemental brief. ECF No. 48. The Government filed a Response on June 17, 2021.[1] ECF No. 52. Defendant filed his Reply on June 22, 2021. ECF No. 53.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve Defendant's Renewed Motion for Compassionate Release on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, the Court will **GRANT** Defendant's Renewed Motion for Compassionate Release [#42, 48].

## II. BACKGROUND

In June 2015, Defendant, along with his co-defendants, conspired and participated with members of the Felony Lane Gang to defraud federally insured financial institutions. ECF No. 1, PageID.1–2. Defendant agreed to commit bank fraud in an around Detroit, Michigan, utilizing rental cars and flights between Florida and Michigan to carry out the scheme. PSR ¶ 13. In total, the conspirators frequently obtained or attempted to obtain at least $25,000 from various federally

---

[1] The parties filed a Stipulation and Order regarding the extension of filing deadlines. ECF No. 46.

insured financial institutions. *Id.* Additionally, Defendant and his co-defendants caused losses to victims stemming from damages to cars while breaking into them, stealing cash from the cars, and from accidents to the rental car while fleeing. *Id.* at ¶ 17.

In April 2018, Defendant was charged with multiple counts for his involvement in the aforementioned crimes. ECF No. 1. Defendant entered a guilty plea to bank fraud conspiracy, 18 U.S.C. § 1349 (Count 1), and aggravated identity theft, 18 U.S.C. § 1028A (Count 3) in August 2019. ECF No. 15. On February 4, 2020, the Court sentenced Defendant to serve 18 months on one count of bank fraud (Count 1) and a consecutive term of 24 months on a count of aggravated identity theft (Count 3), for an aggregate term of 42 months imprisonment. ECF No. 22. The Court also imposed a term of supervised release for a term of 36 months on Count 1 and 12 months on Count 3, which was to be served concurrently. *Id.* Additionally, the Court also ordered restitution of $31,145. *Id.*

Defendant first moved for compassionate release in the summer of 2020. ECF No. 23. In his first Motion, Defendant argued that his family circumstances, including his brother's tragic death, his son's need for constant care in light of his disabilities, and his family's need for financial support, constitute extraordinary and compelling reasons for his early release. ECF No. 33, PageID.179. He also argued

that his Body Mass Index ("BMI") placed him at an increased risk to contract COVID-19. *Id.*

On October 29, 2020, the Court denied Defendant's Motion. ECF No. 41. In its Opinion and Order, the Court first determined that Defendant exhausted his administrative remedies and that extraordinary and compelling reasons existed, based on his preexistent medical condition, that were sufficient to justify compassionate release. *Id.* at PageID.268–70. Moreover, the Court found that Defendant was no longer a danger to the community. *Id.* at PageID.271–72. The Court ultimately concluded, however, that the factors set forth in 18 U.S.C. § 3553(a) did not weigh in favor of granting Defendant's requested relief. *Id.* at PageID.272.

In Defendant's present Motion, he renews his request for compassionate release. ECF No. 48. As of the date of writing, Defendant has served 27 months of his sentence. ECF No. 52, PageID.457. He is scheduled to be released from the BOP in March 2022. ECF No. 48, PageID.287. In his present Motion, Defendant argues that his family circumstances, the harsh conditions of COVID-19 confinement, his rehabilitation, and his preexisting medical condition adequately establish extraordinary and compelling reasons for his release. Further, Defendant contends that a fair application of the 18 U.S.C. § 3553(a) factors weigh in favor of his release.

In its Response, the Government maintains that the Court should not grant Defendant's requested relief. First, the Government asserts that the facts surrounding Defendant's health have changed since October 2020. ECF No. 52, PageID.434. The Government highlights that Defendant contracted and recovered from COVID-19 while at FCI Butner Medium II and has since refused the COVID-19 vaccination. *Id.* at PageID.434–35. Second, the Government asserts that even if the Court were to find that Defendant's family circumstances constitute extraordinary and compelling reasons for release, the 18 U.S.C. § 3553(a) factors weigh against Defendant's requested relief. *Id.* at PageID.455–57.

Defendant timely filed his Reply on June 22, 2021. ECF No. 53.

### III. LAW & ANALYSIS

#### A. Legal Standard

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release for "extraordinary and compelling reasons." *See United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020). Under this provision, a defendant may bring a motion for compassionate release on his own behalf after either exhausting the Bureau of Prisons' administrative process or after thirty days have passed from the warden's receipt of a request for release—whichever is earlier. *Id.* at 1105.

Before granting compassionate release, a court must consider a "three-step inquiry": the Court must (1) " 'find' that 'extraordinary and compelling reasons warrant a sentence reduction,'" (2) "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,'" and (3) "'consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a).'" *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *Jones*, 980 F.3d at 1101). The Sixth Circuit has recently held that the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 is not an applicable policy statement for compassionate release motions brought directly by defendants. *Id.* at 519. Accordingly, in such cases, a court need not consider § 1B1.13 and has the discretion to define "extraordinary and compelling." *Id.* at 519–20.

### B. Analysis

#### 1. Exhaustion

As this Court recognized in its October 29, 2020 Opinion and Order, Defendant properly exhausted his administrative remedies with the BOP. ECF No. 41, PageID.268. Defendant thus satisfies the Court's first inquiry of the three-step process.

#### 2. Extraordinary and Compelling Reasons

As explained above, district courts within the Sixth Circuit are no longer confined to the considerations outlined in § 1B1.13's policy commentary when

determining if a defendant's request is "extraordinary and compelling." *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

In its October 29, 2020 Opinion and Order, the Court found that Defendant presented extraordinary and compelling reasons for compassionate release based on the fact that he is clinically obese. *See* ECF No. 41, PageID.268–70. At the time of Defendant's first Motion, the Government conceded that Defendant's preexistent medical condition constituted an extraordinary and compelling reason for compassionate release. *See id.* at PageID.269. In its present Response, however, the Government argues that Defendant's medical condition and the COVID-19 pandemic no longer qualify as extraordinary and compelling reasons for release. ECF No. 52, PageID.435. Specifically, the Government emphasizes that Defendant (1) contracted and fortunately recovered from COVID-19, and (2) declined a COVID-19 vaccination. *Id.* at PageID.436, 447. The Court will address each argument below.

First, the Court finds that the Government's argument related to Defendant's successful recovery from COVID-19 is unavailing. In its Response, the Government emphasizes that a majority of courts have concluded that the risk of contracting COVID-19 is mitigated, and compassionate release is therefore not justified on this basis, even before vaccination, for individuals who have fully recovered from the virus. ECF No. 52, PageID.447. The Government cites to several out-of-circuit

decisions to support its argument that Defendant's recent recovery undermines his prior medical argument. *Id.* at PageID.447–50.

The Court notes that another court within this District recently explained that although an individual's recovery from COVID-19 and full vaccination[2] decreases their likelihood of developing severe symptoms in the future, "recent data reveals that the threat of severe illness or death from COVID-19, while diminished, is nevertheless real." *United States v. Sweet*, No. 07-20369, 2021 WL 1430836, at *2 (E.D. Mich. Apr. 15, 2021); *see also United States v. Brownlee*, No. 14-20562, 2020 WL 6118549 (E.D. Mich. Oct. 16, 2020) (granting compassionate release for a defendant who previously contracted COVID-19 and survived). In *Sweet*, the court went on to adopt an Illinois district court's skepticism of a similar reinfection argument:

> [T]he World Health Organization (WHO) issued a scientific brief saying that the public belief that a one-time infection leads to immunity remains unproven and is unreliable as a basis for response to the pandemic. *See* WHO, "Immunity Passports" in the Context of COVID-19, https://www.who.int/newsroom/commentaries/detail/immunity-passports-in-the-context-of-covid-19 (last accessed June 22, 2020). Specifically, the WHO says that "[t]here is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection." *Id.* The risk of reinfection is not merely theoretical.

---

[2] The Court will address the parties' arguments related to Defendant's decision to decline a vaccination below.

*Id.* (citing *United States v. Budd*, No. 4:07-cr-40026, 2021 U.S. Dist. LEXIS 12650, at *5–6 (C.D. Ill. Jan. 11, 2021)).

Moreover, the Court takes notice of Exhibit B to Defendant's Reply, which is a series of sixteen alarming BOP press releases in which an incarcerated individual tested positive for COVID-19 twice and eventually passed away. ECF No. 53-3. Defendant also separately cites to a BOP press release in which an incarcerated individual at FCI Butner, who, like Defendant, had long-term pre-existing medical conditions which have been recognized by the CDC as risk factors for developing more severe COVID-19 symptoms, tested positive twice and eventually succumbed to the virus. *See* ECF No. 53, PageID.462 (citing BOP Press Release, *Inmate Death at FCI Butner (Low)* (Sept. 17, 2020).

While the Government's point about reinfection is well taken, the Court ulitmatley concludes that Defendant's recovery from COVID-19 should not foreclose his requested relief. Defendant remains at an elevated risk from the disease in light of his obesity. At the time of writing, no convincing medical evidence yet exists to demonstrate to this Court that Defendant has any assurance of prospective immunity or a similar reaction to the virus should he contract it again.[3] Further, the

---

[3] The Government emphasizes that Defendant recovered from COVID-19 "without significant consequence." ECF No. 52, PageID.447. According to Defendant's provided declaration, however, he experienced headaches, appetite loss, a high fever, stomach and joint pain, diarrhea, and he lost his sense of smell and taste. ECF No. 48-3. Defendant's medical records, which he provided under seal, do not detail

Court emphasizes, as it has in its prior orders resolving motions for compassionate release, that COVID-19 presents unique challenges to the vulnerable communities in correctional institutions. Until the novel disease completely dissipates, the Court will recognize the special risks individuals face within these facilities. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated June 9, 2021); *see also Sweet*, 2021 WL 1430836, at *3 ("The frequent large-scale movements of inmates around prison facilities create ideal conditions for the disease's spread.") (citation omitted). Accordingly, the Court declines to modify its prior finding as to extraordinary and compelling reasons on the basis that Defendant recovered from COVID-19.

Second, the Court finds the Government's argument related to Defendant's decision to refuse the COVID-19 vaccine a closer call. Defendant refused the vaccine on April 2, 2021. ECF No. 50-3. In its Response, the Government

---

Defendant's reaction to the virus. Rather, it appears Defendant tested positive for COVID-19 on February 2, 2021 and remained in quarantine until he was asymptomatic and afebrile on February 16, 2021. ECF No. 50-3, PageID.409–11. The medical records also reveal that "[d]ue to the sheer volume of inmates positive with COVID-19, daily vital signs and BEMR COVID-19 screenings [were] no longer recommended." *Id.* at PageID.410. Individuals at FCI Butner, like Defendant, were to be monitored for symptoms twice a day. *Id.*

emphasizes the efficacy of the vaccine and the fact that many courts have denied defendants' requests for release based on their decision to decline the vaccine. ECF No. 52, PageID.436–47. Defendant contends that his position on the vaccine "was reasonable under the circumstances." ECF No. 53, PageID.465. In support of his Motion, Defendant submitted an affidavit explaining why he declined the vaccine. ECF No. 48-3. There, he asserts that the staff at FCI Butner "failed to provide any information on the safety and efficacy of it" and that he "just recovered from the very painful and complicated symptoms of the virus." *Id.* at PageID.315. Defendant also states that he still has questions about the vaccine and their possible side effects. *Id.* Moreover, Defendant asserts that "[s]everal staff members" advised him that they were similarly worried about the vaccine and refused it because of those same concerns. *Id.* In his Reply, Defendant also expresses his concerns after observing other individuals at FCI Butner experience "serious side effects." ECF No. 53, PageID.464.

The Court notes that several other district courts in the Sixth Circuit have declined to find extraordinary and compelling medical circumstances when a defendant has decided to not receive the COVID-19 vaccine. *See, e.g.*, *United States v. Cotton*, No. 18-20315, 2021 WL 1601403 (E.D. Mich. Apr. 23, 2021); *United States v. Goston*, No. 15-20694, 2021 WL 872215 (E.D. Mich. Mar. 9, 2021); *United States v. Ervin*, No. 14-000195, 2021 WL 848690 (M.D. Tenn. Mar. 5, 2021). The

Court also takes Defendant's argument related to his limited access to information while incarcerated seriously. ECF No. 48, PageID.299. Indeed, the Court declines to hold Defendant to the same standard as someone with unlimited access to medical information when making an informed decision about taking a vaccine. To avoid such a dilemma in the future, the Court encourages the BOP to not only make a vaccine available to all prisoners, but also to take more deliberate steps to answer questions and promote engagement with the vaccine as soon as possible.

Upon careful consideration, the Court will follow the other district courts within the Sixth Circuit in determining that Defendant's decision to decline the COVID-19 vaccine weighs against a finding of extraordinary and compelling reasons as it relates to Defendant's preexistent medical condition. Importantly, however, Defendant presents at least one other possible extraordinary and compelling reason for his release. ECF No. 48, PageID.290. At this juncture, the Court finds that Defendant's decision to decline the vaccine should not automatically disqualify him from obtaining compassionate release. Rather, the Court will consider his other presented reason—his family circumstances—in full below.

Defendant first cited to his family circumstances as an additional reason for his compassionate release in his original Motion. In its October 29, 2020 Opinion and Order, the Court summarized Defendant's cited family circumstances in a footnote:

> Specifically, Defendant's fiancé Tandrell Ashley explains that Defendant's brother passed away in April and that he provided financial support and care for her nineteen-year-old son, Jaivion Antoine, who requires twenty-four-hour care. ECF No. 33-4. Defendant provided a physician's note to corroborate Jaivion Antoine's complex medical needs. ECF No. 33-5. In his letter to the Court, Defendant explained that "[i]t's been a mental, physical, emotional and financial struggle for Tandrell the past 14 months [he's] been incarcerated, but due to the this 'COVID-19 Pandemic' the past 2 ½ months have been very hectic for [Tandrell]." ECF No. 23, PageID.160.

ECF No. 41, PageID.270 n2. The Court found it unnecessary to rule on whether these circumstances presented another extraordinary and compelling reason for release in light of its finding as to Defendant's preexistent medical condition. *Id.* at PageID.269–70.

Defendant renews his argument that his family circumstances are an extraordinary and compelling reason for his release in his present Motion. ECF No. 48, PageID.290. He asserts that he is needed at home to ensure that his Jaivion, who is wheelchair bound and unable to care for himself in light of his disabilities, receives adequate care and to help ease the financial burden on his fiancé Ms. Ashley. *Id.* Defendant reminds the Court that his brother, who provided additional financial support to Ms. Ashley, succumbed to COVID-19 last year, leaving Ms. Ashley with limited options to care for Jaivion. *Id.* at PageID.292–93. He cites to Ms. Ashley's and Dr. Ana-Hernandez-Puga's (Jaivion's pediatrician) original letters in support of his first Motion to corroborate Jaivion's complex medical needs. ECF Nos. 33-4, 33-5. According to Defendant, Ms. Ashley's parents try to help care for Jaivion, but

they are elderly and suffer from various medical conditions of their own. ECF No. 48, PageID.293. He asserts that Ms. Ashley's parents "struggle to lift Jaivion, even together, as he weighs 101 pounds. This means Jaivion is restricted to their sofa, as he is unable to move or complete any task of daily living[.]" *Id.* at PageID.294.

In its Response, the Government agrees that Defendant's family has been significantly impacted by the ongoing pandemic. ECF No. 52, PageID.453. The Government acknowledges Defendant's brother's tragic death and the subsequent financial hardship endured by Ms. Ashley to provide for Defendant's family. *Id.* at PageID.454. Moreover, the Government recognizes that Jaivion's paternal grandmother, who also helped with his daily care, has also passed away. *Id.* The Government also agrees with Defendant that Ms. Ashely's parents "are older with health conditions of their own preventing them from giving Jaivion all the care he needs." *Id.* While the Government does not appear to contest Defendant's argument that his family circumstances constitute extraordinary and compelling reasons for release, it does assert that that the sentencing factors under 18 U.S.C. § 3553 still weigh against release. *Id.* at PageID.455.

Upon careful review of Defendant's Motion, the Court finds extraordinary and compelling reasons for Defendant's release based on family circumstances. Ms. Ashely's letter confirms her hardships in providing around-the-clock care for Jaivion. ECF No. 33-4. Dr. Hernandez-Puga's letter corroborates Javion's specific

disabilities, explaining that Jaivion is "a medically fragile adult." ECF No. 33-5, PageID.211. Additionally, the tragic death of Defendant's brother and Jaivion's paternal grandmother undoubtedly compounded the financial hardships faced by Defendant's family during the ongoing pandemic. The Court also finds it significant that the Government does not contest the specific arguments related to Defendant's family circumstances.

Accordingly, Defendant satisfies the Court's second inquiry of the three-step process, despite the Court's amended conclusion as to Defendant's medical condition qualifying as a separate reason for release.

### 3. 18 U.S.C. § 3553(a) Factors

Given that Defendant has satisfied the first two prongs of the three-step inquiry, the Court must now consider the relevant sentencing factors under 18 U.S.C. § 3553(a). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citation omitted). These factors include a defendant's history and characteristics; the nature and circumstances of the offense; due consideration of the seriousness of the offenses; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing him or her with any necessary correctional services and treatment. 18 U.S.C. § 3553(a).

In its October 29, 2020 Opinion and Order, the Court determined, after finding that Defendant was not a danger to the community, that the § 3553(a) factors did not weigh in favor of granting Defendant's requested relief. ECF No. 41, PageID.272. The Court placed particular emphasis on the seriousness of the committed offenses and the efficacy of deterrence. *Id.* at PageID.271–72. In his present Motion, Defendant does not dispute the seriousness of his offenses. ECF No. 48, PageID.306. He instead emphasizes his exemplary institutional record. *Id.* In support of his Motion, Defendant attaches a summary of his completed programming while detained, ECF No. 50-1, as well as documentation proving that he has not incurred any disciplinary infractions, ECF No. 50-2. He also details his work schedule as a plumber at FCI Butner, which is part of his vocational training. ECF No. 48, PageID.298.

In its Response, the Government emphasizes the serious nature of the multi-jurisdictional offenses which involved several non-institutional victims. ECF No. 52, PageID.456. The Government also argues that Defendant's criminal background is extensive. *Id.* at PageID.457. The Government does acknowledge that Defendant has now served more time of his custodial sentence and that this matter presents a "close question" for the Court. *Id.*

As an initial matter, the Court reasserts that Defendant was convicted of serious offenses. As indicated above, Defendant does not contest this. The details

of the offenses are well documented in the Court's October 29, 2020 Opinion and Order and need not be repeated here. Accordingly, the nature and circumstances of the underlying offenses weigh against Defendant. However, the Court's inquiry into the relevant § 3553(a) factors does not conclude here. As explained above, the Court previously found that Defendant is no longer a danger to the community. Indeed, the Government previously conceded this. In its October 29, 2020 Opinion and Order, the Court explained:

> Defendant has put in work to rehabilitate himself between the offense and his arrest in the present matter. In that period, Defendant completed three years of a four-year apprenticeship in plumbing and was employed as a full-time plumber and appliance repairman. PSR ¶¶ 75, 76. His employer, Mr. Robert Pollina, provided rave reviews of Defendant's work at the time of Defendant's sentencing. PSR ¶ 78. The Court takes notice that Mr. Pollina described Defendant as one of his "most dedicated employees" who is "well respected by everyone" at his business in support of Defendant's present motion. ECF No. 33-7, PageID.218. Mr. Pollina also writes that Defendant is "an upstanding, honorable, and upright individual, and an active member of the community" who would have a position in his business upon his release from prison. *Id.*
>
> The Court also takes notice of Defendant's letter, where he explains that during the period between his conduct in 2015 and arrest in 2019, he "became a very productive, hard working, tax paying, law abiding citizen." ECF No. 23, PageID.155. Defendant emphasizes his commitment to his religion, employment, education, and his family. *Id.* Relatedly, the Court acknowledges receiving a copy of Defendant's recent High School Equivalency Credential certificate, which Defendant received on October 5, 2020.

ECF No. 41, PageID.270–71. Additionally, the Court emphasizes once more that Defendant has not incurred a single disciplinary infraction while incarcerated. ECF

No. 50-2. This is significant. As another court within this District recently opined, this model behavior "demonstrates a respect for the law and indicates how [the defendant] may perform on supervised release." *United States v. Sweet*, No. 07-20369, 2021 WL 1430836, at *3 (E.D. Mich. Apr. 15, 2021) (citation omitted).

Perhaps most importantly, Defendant has now served more than fifty percent of his sentence. When the Court first looked to the relevant factors under § 3553(a) in October 2020, and expressed its concern with affording adequate deterrence, ECF No. 41, PageID.273, this was not the case. A number of courts within this District, including this Court, have released individuals who have served a smaller percentage of their imposed sentences. *See United States v. Manzano*, 505 F. Supp. 3d 739 (E.D. Mich. 2020); *United States v. Cannon*, No. 15-20783, 2020 WL 5887341, 2020 U.S. Dist. LEXIS 183984 (E.D. Mich. Oct. 5, 2020); *United States v. Gardner*, No. 14-cr-20735-001, 2020 WL 4200979, 2020 U.S. Dist. LEXIS 129160 (E.D. Mich. Jul. 22. 2020). At this time, the Court finds that Defendant's twenty-seven months in prison is an adequate punishment and deterrent for the type of offenses he engaged in. Significantly, the Court recommended at sentencing that Defendant participate in the BOP's residential drug abuse program ("RDAP"), ECF No. 22, PageID.147, but COVID-19 foreclosed this as an option. As Defendant highlights in his Motion, he would have been able to work towards taking some time off his imposed custodial sentence had he been permitted to participate in RDAP. ECF No.

48, PageID.297. The Court thus questions how continued incarceration without this program can benefit Defendant as he continues to improve his life for the better and work towards becoming a productive citizen outside of the walls of confinement at FCI Butner.

Lastly, the Court notes that Defendant has a strong release plan to live with Ms. Ashley and their children. He has a supportive family at home who needs his financial and physical support. Moreover, Defendant also has a job waiting for him upon release at Total Appliance. ECF No. 48-10. Accordingly, the Court finds the § 3553(a) factors weigh strongly in favor of granting compassionate release at this time.

## IV. CONCLUSION & ORDER

For the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release [#42, 48] is **GRANTED**. His custodial sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Defendant be **IMMEDIATELY RELEASED** from custody, without holding him for a 14-day quarantine period at FCI Butner.

**IT IS FURTHER ORDERED** that Defendant shall, upon release, commence his originally imposed term of supervised release. *See* ECF No. 22, PageID.148.

Upon 24 hours of release, Defendant shall call the Probation Department to schedule an appointment.

**IT IS SO ORDERED.**

Dated: June 28, 2021

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record and on Jerome Watson, No. 19800-104, Federal Correctional Institution 2, P.O. Box 1500, Butner, NC, 27509 on
June 28, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager